

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**QUINN AUSIDI GOFFIGAN**

          **Petitioner,**

v.                                                            Criminal No. 2:16-cr-34

**UNITED STATES OF AMERICA,**

          **Respondent.**

*MEMORANDUM OPINION & ORDER*

Before the Court is Quinn Ausidi Goffigan's ("Petitioner") motion requesting compassionate release pursuant to 18 U.S.C. § 3582(c). ECF No. 83. The Government opposed the motion. ECF No. 85. Petitioner did not reply. This matter is now ripe for judicial determination. For the reasons below, the Petitioner's motion is **DENIED**.

**I. FACTUAL AND PROCEDURAL HISTORY**

On April 6 2016, Petitioner was named in a three-count Superseding Indictment charging Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. 846 (Count One) and Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. 841(a)(1) and (b)(1)(C) (Counts Two and Three). ECF No. 16. On April 26, 2016, Petitioner pleaded guilty to Count Two of the Superseding Indictment. ECF Nos. 21, 22. According to his Presentencing Report ("PSR"), Petitioner was attributed with a total of 1,503.04615 grams of "crack" cocaine and 3 kilograms of powder cocaine. ECF No. 36 at ¶ 35. Moreover, the PSR showed that Petitioner was an organizer/leader in this offense which involved least half a dozen other co-conspirators and he managed at least four of them. *Id.* at ¶¶ 8-37. Also, on August 10, 2015, Petitioner suffered multiple gunshot wounds, prior to arrest for the underlying offense. *Id.* at ¶ 31. In his PSR, Petitioner reported that he still had chest pains as a result of the

wounds and the PSR confirmed that a partial right upper and right middle lobectomy was performed after a gunshot wound to his right chest. *Id.* at ¶ 114. In all, Petitioner was assessed a total offense level of 37 and criminal history category VI. *Id.* at ¶ 135-136. On September 6, 2016, the Court imposed a sentence of 240 months imprisonment followed by six (6) years supervised release. ECF No. 34. Petitioner's current projected release date is January 23, 2033 and he is currently incarcerated at FCI Bennettsville, a medium-security federal prison in South Carolina.

On June 25, 2020, Petitioner filed his *pro se* motion for compassionate release. ECF No. 71. October 20, 2020, Petitioner filed the motion through counsel. ECF No. 83. The Government opposed the motion. ECF No. 85. Petitioner did not reply.

Petitioner requests compassionate release because of the ongoing COVID-19 pandemic and argues that his underlying health condition places him at a higher risk for serious illness if he contracts the virus. ECF No. 83. At age 40, Petitioner claims that he has significant medical problems from three (3) gunshot wounds he sustained prior to his arrest in 2015 which collapsed his lungs and give him breathing problems. ECF No. 83 at 1. While incarcerated Petitioner has completed various courses including Drug Education, Parenting II, Introduction to Health Wellness, and a Graduate Diploma Equivalency course. *Id.* at Exhibit 3. Accordingly, Petitioner requests that this Court grant him compassionate release and allow him to begin supervised release confined at home with his ex-wife and their daughter. *Id.* at 18.

## II. LEGAL STANDARD

### A. The Exhaustion Requirement

A petitioner may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the

warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id.* However, the exhaustion requirement may be waived under the following circumstances: (1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice. *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020) *citing Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). The COVID-19 pandemic, which could result in catastrophic health consequences for petitioners vulnerable to infection, implicates all three exceptions justifying the waiver of the exhaustion requirement. *Miller v. United States*, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020); *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. April 3, 2020); *United States v. Perez*, 2020 WL 1456422, at *3–4 (S.D.N.Y. Apr. 1, 2020); *United States v. Gonzalez*, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020).

**B. The Compassionate Release Standard**

As amended by the FIRST STEP Act, a court may modify a term of imprisonment on the motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. Before the passage of the FIRST STEP Act, the Sentencing Commission provided that a sentence may be modified based on the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all

provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

However, U.S.S.G. § 1B1.13 is now outdated following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *McCoy v. United States*, 2020 WL 2738225, at *4 (E.D. Va. May 26, 2020); *see also United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive"). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

### III. DISCUSSION

#### A. The Exhaustion Requirement

The Court finds that Petitioner did exhaust his administrative remedies prior to bringing his motion to the Court. On June 26, 2020, Petitioner submitted his request to the Warden at FCI

Bennettsville. ECF No. 84. On July 20, 2020, the Warden denied Petitioner's request noting that Petitioner did not meet the medical criteria to be considered for compassionate release. ECF No. 83 at Exhibit 2. The Government does not contest that Petitioner satisfied the exhaustion requirement. *See* ECF No. 85 at 7.

**B. Petitioner's Compassionate Release Request**

The Court now turns to whether Petitioner has set forth extraordinary and compelling reasons to modify his sentence because of the grave risk COVID-19 poses to individuals with underlying health conditions. During the COVID-19 pandemic, federal courts around the country have found that compassionate release is justified under the circumstances. *Zukerman*, 2020 WL 1659880, at *4 *citing Perez*, 2020 WL 1546422, at *4; *United States v. Colvin*, 2020 WL 1613943, *4 (D. Conn. Apr. 2, 2020); *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020); *United States v. Jepsen*, No. 3:19-CV-00073 (VLB), 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020); *Gonzalez*, 2020 WL 1536155, at *3; *United States v. Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020); *United States v. Campagna*, No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020). Unlike the above cases, Petitioner's compassionate release is not justified under the circumstances.

First, Petitioner does not show a particularized susceptibility to COVID-19 due to any potential breathing problems from his gunshot wounds as these claims are not supported by any medical evidence. In his motion, Petitioner argues that he has breathing issues as a result of being shot several times in his back, including having bullet fragments in his lungs, that increase his risk of severe illness or death from COVID-19. ECF No. 83 at 1; *See* ECF No. 71. Particularly, Petitioner claims that his respiratory problems are similar to asthma and chronic obstructive pulmonary disease (COPD), which cause him to have an increased risk of serious illness or death

5

if he contracts COVID-19. *Id.* at 11. While BOP records indicate Petitioner has small bullet fragments in the right perihilar midlung and one in the right anterior upper-chest wall, the records also indicate that "the left lung and pleural space are clear." ECF No. 84. Moreover, Petitioner did not submit medical records showing that he has any breathing problems. Rather, on June 1, 2020, Petitioner's vital signs were assessed which showed that his lungs sounded clear bilaterally and there was adequate respiratory effort. *Id.* Records also indicate, as of August 13, 2020, that he "denied any difficulty with breathing or swallowing." According to the Centers for Disease Control and Prevention ("CDC"), individuals who have COPD are at increased risk of severe illness from the virus that causes COVID-19.[1] However, this Court finds that Petitioner's medical records do not show that he has COPD or that he has breathing issues. Thus, the Court finds that Petitioner is not at increased risk for serious illness if he contracts COVID-19, at this time.

Second, however, Petitioner does show a potential risk of contracting the disease at his prison facility. As of November 19, 2020, the BOP has reported a total of 114 (1 current) positive cases of COVID-19 for inmates and 33 (22 current) for Staff at FCI Bennettsville, though most have recovered.[2] Moreover, increased testing is showing that COVID-19 has rapidly spread throughout prisons all over the country.[3] Despite the BOP's protection measures, individuals housed in prisons remain particularly vulnerable to infection. *See Muniz*, 2020 WL 1540325, at *1; *see also Esparza*, 2020 WL1696084, at *1 (noting that "[e]ven in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at

---

[1] Centers for Disease Control and Prevention, "People Who are at Higher Risk," *CDC.gov*, available at https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html
[2] *See* Federal Bureau of Prisons, "COVID-19 Corona Virus," *BOP.gov*, https://www.bop.gov/coronavirus/
[3] *See* Centers for Disease Control and Prevention, "Coronavirus Disease 2019: Cases in the US," *CDC.gov*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html

least six feet from others"). Therefore, the Court need not wait until an outbreak occurs at a specific prison facility to determine that a petitioner has a particularized risk of contracting the disease. *See Zukerman*, 2020 WL 1659880, at *6 *citing Rodriguez*, 2020 WL 1627331, at * 12 ("the Court did not intend for that sentence to include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic").

Third, the § 3553(a) factors do not weigh in favor of Petitioner's compassionate release. The seriousness of Petitioner's conduct for his underlying offense remain unchanged. According to his PSR, Petitioner was an organizer/leader of the offense where he managed at least four other co-conspirators. ECF No. 36 at ¶¶ 8-37. Moreover, during the commission of his offense, Petitioner fled and law enforcement did not find him again until he was shot in August 2015. *Id.* When Petitioner was found in the hospital, a forensics technician found twenty-five baggies of a white rock substance later confirmed to be crack cocaine. *Id.*

Petitioner has an extensive juvenile criminal record with his first felony conviction at fourteen years old. *Id.* at ¶¶ 53-57. As an adult, Petitioner was arrested for various violations including traffic offenses, failure to appear, resisting arrest, destruction of property, domestic assault and battery, and felony drug trafficking. *Id.* at ¶¶ 60-79. From age 23-31, Petitioner was imprisoned for selling crack cocaine. *Id.* at ¶ 80. After his release in December 2011, Petitioner returned to selling drugs by June of 2012 until being convicted of the instant offense. *Id.* at ¶¶ 81-83. Moreover, while Petitioner has been imprisoned at FCI Bennettsville he has received three disciplinary infractions for possession of drugs/alcohol (2018), being insolent to a staff member (2019), and possessing a dangerous weapon (2019). ECF No. 83 at Exhibit 3. Based on his criminal record and disciplinary infractions, the Court finds that Petitioner has a poor history of changing his behavior. On the other hand, since his incarceration, Petitioner has completed various

7

educational courses, maintained steady work since October 2019, received his GED, and completed various drug abuse and education programs. *Id.*

Overall, Petitioner's criminal history and his utter disregard in following court rules, state and federal law, make him unlikely to remain crime free if released to home confinement. Also, Petitioner has not presented evidence showing that he suffers from an underlying health condition that places him at higher risk for severe illness if he contracts COVID-19. Therefore, based on the aforementioned factors, the Court finds that Petitioner does not qualify for compassionate release.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's motion is **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED**.

Norfolk, Virginia
November 23, 2020

Raymond A. Jackson
United States District Judge